**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RHONDA JEAN ZUNIGA** | CASE NO. 13-CV-01678-YGR |
| Plaintiff**,** | |
| vs. | **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| **NANCY A. BERRYHILL,** Acting Commissioner of Social Security | Dkt. Nos. 49, 58 |
| Defendant**.** | |

Plaintiff Rhonda Jean Zuniga filed this action against defendant Nancy A. Berryhill as Acting Commissioner of the Social Security Administration ("Commissioner") seeking judicial review of the Commissioner's finding that she was not disabled *prior* to April 22, 2013, under section 1614(a)(3)(A) of the Social Security Act ("SSA").[1] Pending before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 49, 58.) Plaintiff argues that the Administrative Law Judge (the "ALJ") erred by (i) failing to reevaluate Zuniga's subjective testimony of migraines in light of Dr. Lee's new medical opinion; (ii) using boilerplate language to reject Zuniga's testimony on the intensity, persistence, and limiting effects of her migraines; (iii) affording "little weight" to the medical opinion of Dr. Rubin; and (iv) failing to give any consideration to numerous medical sources, namely Dr. Saphir, Dr. Dolnak, Dr. Dwyer, Dr. McMahon, Dr. Cheng, Dr. Speradino, Dr. Weems, and Dr. Truong. Based thereon, plaintiff seeks vacatur with a finding of disability and an award of benefits.

---

[1] Not at issue is the determination of the California Disability Determination Services dated February 7, 2014, that plaintiff has been disabled since April 22, 2013. (Dkt. No. 27-8.)

Having carefully considered the papers submitted and the administrative record in this case, and for reasons set forth below, plaintiff's motion for summary judgment is **DENIED**, and defendant's cross-motion is **GRANTED**.

**I.  PROCEDURAL BACKGROUND**

Zuniga filed her first application for a period of disability and disability insurance benefits with the Social Security Administration (the "SSA") on February 29, 2008, claiming that she had been disabled since October 1, 2007. (Dkt. No. 41, Administrative Record ("AR") 826.) Plaintiff subsequently amended her application to allege that she had been disabled since March 31, 2004. (*Id*.) Her claim was denied on December 23, 2009. (*Id*.) Plaintiff appealed, and on February 14, 2012, U.S. District Court Judge Charles R. Breyer remanded the case for rehearing to allow the Commissioner to consider new evidence submitted by plaintiff which contained opinions from physicians on plaintiff's ability to work. (*Id*. 868.)

On March 16, 2010, Zuniga filed a second application for a period of disability and disability insurance. (*Id*. 827.) Plaintiff appeared at a second hearing before an ALJ (the "Initial ALJ") on February 15, 2012, who found that he did not have jurisdiction over plaintiff's second application because the Appeals Council had not yet remanded plaintiff's first application. (*Id*. 826.) The Initial ALJ therefore issued a "recommended decision" to reject plaintiff's second application on April 19, 2012. (*Id*. 833.)

On July 31, 2012, the Appeals Council issued an order (i) remanding the first application for consideration of the new evidence, (ii) vacating the Initial ALJ's recommended decision regarding the second application, (iii) consolidating the first and second applications, and (iv) directing the Initial ALJ to reevaluate Zuniga's credibility "and address whether, in light of the new information, the claimant's impairments further limit" her functional capacity and ability to find full-time employment. (*Id*. 878.)

A third hearing was held on November 7, 2012. (*Id*. 908.) In an order dated January 30, 2013, the Initial ALJ once again found that the plaintiff was "not disabled." (*Id*. 914.) Zuniga appealed for a remand pursuant to 42 U.S.C. § 506(g) on April 12, 2013. (Dkt. No. 27.) On March 11, 2015, Judge Breyer issued an Order granting plaintiff's motion for remand for further

2

consideration of a new medical opinion. Thus, the Order provided:

> The Court recognizes that the correlation identified by Dr. Lee is not necessarily causation and that ALJ Mazzi has reviewed Ms. Zuniga's substantial record multiple times. However, in light of ALJ Mazzi's dismissal of Ms. Zuniga's migraine claims as not supported by medically acceptable diagnostic techniques, the Court cannot ignore that Dr. Lee has arguably tied these claims to such techniques. [Cite.] ALJ Mazzi did not have the opportunity to review Dr. Lee's opinion and assessment of the MRI records. Therefore the Court finds that Dr. Lee's opinion correlating Ms. Zuniga's migraines with her history of stroke, indicated by medically acceptable diagnostic techniques, is new material evidence which could have changed the outcome of the Commissioner's Decision had it been available at the time of ALJ Mazzi's adjudication. [Cite.] Further administrative proceedings will allow the Commissioner to re-evaluate Ms. Zuniga's credibility and address whether, in light of the new evidence, Ms. Zuniga's impairments also existed during the period adjudicated under the January 2013 Decision.

(Dkt. No. 37 at 10–11 (footnote and internal citations omitted).)

Thereafter, a fourth hearing was held before a new ALJ who issued the decision addressed herein on October 18, 2016. (AR 3717–3738.) The new ALJ denied plaintiff's application was denied with regards to the time period prior to April 22, 2013. (*Id.* at 3737.) Plaintiff appealed and on January 18, 2017, Judge Breyer granted the parties' stipulation to reopen the case for summary judgment pleading. (Dkt. No. 40.) The above-captioned matter was reassigned to this Court on October 13, 2017. (Dkt. No. 53.)

## II. LEGAL FRAMEWORK

This Court has jurisdiction under 42 U.S.C. section 405(g). The Court may reverse an ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ's decision. *Burch*, 400 F.3d at 679.

The SSA employs a five-step sequential framework to determine whether a claimant is disabled. At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). A person is engaged in substantial work activity if her work involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 404.1572(b). If the claimant is engaged in substantial gainful activity, she is not disabled. If the claimant does not engage in substantial gainful activity, then the ALJ proceeds to Step Two of the evaluation.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment (or combination of impairments) that meets the duration requirement of 20 C.F.R. § 404.1509,[2] she is not disabled pursuant to the regulation. Otherwise, the ALJ proceeds to Step Three.

At Step Three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1., 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step.

Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. The ALJ considers both severe and non-severe impairments

---

[2] The duration requirement specifies that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" unless it is "expected to result in death." 20 C.F.R. § 404.1509.

4

1    in determining the claimant's RFC.  20 C.F.R. §§ 404.1520(e), 404.1545.

2    At Step Four, the ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant has the RFC to perform past relevant work, she is not disabled.  If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant can perform any other work besides past relevant work.  20 C.F.R. § 404.1520(g).  "Substantial work activity is work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. §§ 404.1572(a), 16.972(a).  If the claimant can perform other work, she is not disabled.  Otherwise, she is found to be disabled.

In any action brought by or against the United States, the Equal Access to Justice Act requires that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential analysis to determine whether plaintiff was disabled and eligible for disability insurance benefits.  A summary of her decision follows below.

#### A. Step One

At Step One, the ALJ credited plaintiff's testimony and found that she had not engaged in substantial gainful activity since February 29, 2008, the alleged onset date.  (AR 3724.)

#### B. Step Two

At Step Two, the ALJ determined that the plaintiff "suffered from the following severe impairments: obesity, degenerative disc disease of the lumbar spine, asthma, hypothrydism, history of migraine headaches, [] affective disorder, and symptoms of sleep apnea."  (*Id.*)  The ALJ found that these impairments "more than minimally affect the claimant's ability to perform basic work activities."  (*Id.* at 3725)

5

## C. Step Three

At Step Three, the ALJ found that plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id*.) First, the ALJ reasoned that obesity and headaches are not listed impairments. (*Id*.) Second, she stated that "claimant's degenerative disc disease does not meet or equal listing 1.04 . . . because the record does not demonstrate compromise of a nerve root . . . or the spinal cord with additional findings of . . . evidence of nerve compression[,] . . . spinal arachnoditis[], . . . [or] lumbar spinal stenosis resulting in pseudoclaudication." (*Id*. at 3725.) Third, with regard to plaintiff's asthma, the ALJ found "no objective medical evidence supporting a conclusion that [plaintiff's] condition meets or equals the criteria of Section 3.02A" due to a lack of "evidence of asthma attacks in spite of prescribed treatment and requiring physician intervention with an occurrence of at least once every two months or at least six times a year, or in-patient hospitalization for longer than twenty-four hours for control of asthma." (*Id*. at 3725.) Fourth, the ALJ stated that plaintiff's sleep apnea did not meet or equal Listing 3.09 which "requires clinical evidence of cor pulmonale . . . with [] a mean pulmonary artery pressure of greater than 40 mm HG [] or arterial hypoxemia." (*Id*. at 3725.) Fifth, she found plaintiff's hypothrydism did not meet or equal Listing 9.03 or 9.04 because the "medical evidence of record does not reveal significant limitations caused by a thyroid disorder." (*Id*. at 3726.) Finally, turning to plaintiff's affective disorder, the ALJ determined that "the severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04 [depressive, bipolar, and related disorders]." (*Id*. at 3726.)

## D. RFC Determination

The ALJ then determined that plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following modifications: plaintiff "required a sit or stand option every fifteen minutes [and] should avoid respiratory irritants such as fumes, orders, dusts, gases, and poor ventilation." (*Id*. at 3728.) Further, she found that plaintiff "retains the ability to engage in simple, repetitive tasks equating to unskilled work." (*Id*.)

### E. Step Four

At Step Four, the ALJ found that the claimant was unable to perform any past relevant work as a retail sales clerk, childcare provider, cashier, or home health aide. (*Id*. at 3726.)

### F. Step Five

At Step Five, the ALJ considered Ms. Zuniga's "age, education, work experience, and residential functioning capacity" and determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 3736.) Further, she found that the vocational expert's testimony was consistent with the "Dictionary of Occupational Titles" and "Selected Characteristics of Occupations." (*Id.* at 3737). On such bases, she found that claimant was not disabled as defined under the SSA. (*Id.*)

## IV. DISCUSSION

Plaintiff argues that the ALJ committed the following errors: (i) failing to reevaluate Zuniga's subjective migraine testimony on remand; (ii) using boilerplate language in rejecting Zuniga's subjective testimony on the intensity, persistence, and limiting effects of her migraine symptoms; (iii) affording "little weight" to the medical opinion of Dr. Rubin; and (iv) failing to give any consideration to numerous other medical sources.

### A. Credibility of Plaintiff's Testimony

#### 1. Legal Standard

To assess a claimant's subjective testimony, an ALJ must engage in a two-step inquiry. *Tommasetti v. Astrue*, 533 F. 3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)). First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Id.* Second, if the claimant provides the evidence required by step one, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Smolen*, 80 F.3d at 1283–84). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); (citation omitted). An ALJ "may find the claimant's allegations of severity to be not

7

credible," but the ALJ "must specifically make findings which support this conclusion." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

"These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345 (internal quotation marks and citation omitted). The ALJ may consider, among others, inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which a claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). But "[i]f the ALJ's credibility finding is supported by substantial evidence in the record," the reviewing court "may not engage in second-guessing." *Id.* at 959.

### 2. Discussion

Plaintiff asserts that the ALJ "violated [Judge Breyer's] mandate to reevaluate Ms. Zuniga's migraine testimony" or stated differently, reevaluate plaintiff's testimony in light of the potential correlation between plaintiff's migraines and her history of stroke which Dr. Lee identified. (Dkt. No. 49 at 12.) Ms. Zuniga claims that the ALJ failed to do so and relied on boilerplate language in rejecting Ms. Zuniga's subjective testimony.[3]

Plaintiff does not persuade. In rejecting plaintiff's testimony as to the severity of her symptoms the ALJ stated "specific, clear and convincing reasons for doing so." *Tommasetti*, 533 F.3d at 1039 (citing *Smolen*, 80 F.3d at 1283–84). First, the ALJ found that the "[o]bjective imaging studies do not support plaintiff's subjective allegations to the extent alleged." (AR 3729.)

---

[3] Plaintiff further argues without citation to the record that "[p]ursuant to the Court's mandate, the ALJ had to accept Dr. Lee's opinion that Ms. Zuniga's migraine headache evidence was supported by medically acceptable diagnostic techniques." (Dkt. No. 49 at 12.) Not so. The remand order specifically indicates that Dr. Lee's opinion "*arguably* tied [plaintiff's migraine claims] to such techniques" and that the "correlation identified by Dr. Lee is not necessarily causation." (AR 2940-41 (emphasis supplied).) The remand order did not require the ALJ to accept Dr. Lee's opinion regarding potential correlation.

8

The ALJ specifically discussed Ms. Zuniga's "lumbar spine MRI from July 2009" which was unchanged since a prior November 2007 MRI. (*Id.* (citing AR 481, 589).) Next, she noted that "[l]umbosacral imagining from January 2010" and "lumbar discography in February 2010" also reflected an unchanged condition. (*Id.* (citing AR 894, 3474).) She further stated that an "MRI of the lumbar spine dated April 5, 2013" revealed only "minimal progression of degenerative disc and facet joint changes." (*Id.* (citing AR 3504, 3474).)

Second, the ALJ found that plaintiff's "statement about 'excruciating pain' were not made to a treatment provider and were unsupported by the clinical findings." (*Id.*) Specifically, the treatment records from Kaiser Permanente ("Kaiser Records") "indicate her migraines and asthma were under reasonably good control with only infrequent ER or other medical contacts." (*Id.* (citing AR 332).) Further, the ALJ highlighted that the Kaiser Records indicated that plaintiff's hypothyroidism was under "good control." (*Id.*)

Third, the ALJ stated that "claimant reported good daily activities" including "preparing simple meals, house cleaning, getting her children dressed and ready for school, driving . . . going out multiple times per day, using the computer, reading . . . and swimming in the pool thirty minutes per day." (*Id.*) Fourth, she noted that plaintiff's treating pharmacist wrote on March 3, 2010, "that the claimant's response to conservative treatments had been good and that she had a fair functional level." (*Id.* (citing AR 895).)

Finally, the ALJ specifically addressed the District Court remand and concluded that Dr. Lee's treatment notes did not change her evaluation of plaintiff's subjective testimony. (*Id.* 3730.) Dr. Lee's treatment notes dated July 19, 2013, indicate that plaintiff's history of cryptogenic stroke was "possibly migraine related." (AR 3535-36, 3654.) Dr. Lee hypothesized alternatively that plaintiff's history of stroke could be related to a "protein S" deficiency or a type of "atrial septal aneurysm."[4] (AR 3667.)

The Court disagrees that the ALJ failed to analyze plaintiff's credibility in light of Dr. Lee's opinion as required by Judge Breyer. The ALJ first noted that Dr. Lee's treatment records

---

[4] As Judge Breyer noted, "the correlation identified by Dr. Lee is not necessarily causation." (Dkt. No. 37 at 11.)

9

indicate that "an MRI of the brain from April 2012 showed *no significant change* except for expected evolution *from 2011*." (*Id.* 3731 (citing AR 3535) (emphasis supplied).) Second, the ALJ highlighted that although Dr. Lee identified "migraine-associated vasospasm" as a possible cause of plaintiff's strokes, Dr. Lee also stated that "MRIs of the head and neck done on April 21, 2013, were normal, so the cause of the two strokes remained unclear." (*Id.* (citing AR 3554–3558, 3574).) Third, the ALJ noted that Dr. Lee's treatment records identified two alternative causes, namely either "[l]ow protein S [or] atrial septal aneurysm" may have been the cause of plaintiff's strokes. (*Id.* (citing AR 3574).)

The Court thus finds that the ALJ properly reevaluated Ms. Zuniga's testimony pursuant to the District Court mandate and stated specific, clear and convincing reasons for rejecting the same. *See Tommasetti*, 533 F.3d at 1039 (citing *Smolen*, 80 F.3d at 1283–84). Specifically, the ALJ declined to credit plaintiff's subjective testimony regarding migraines in light of (i) the objective imaging studies, (ii) Kaiser Records, (iii) plaintiff's own testimony regarding robust daily activities, and (iv) Dr. Lee's mixed medical opinions regarding plaintiff's condition and the source of her strokes.

### B. Physician Opinions

#### 1. Legal Standard

In determining whether a claimant is disabled within the meaning of the SSA, the ALJ must consider all medical opinion evidence. *Tommasetti*, 533 F. 3d at 1041. Medical opinions are arranged in a hierarchy of three groups, namely opinions from (i) treating physicians, (ii) examining physicians, and (iii) non-examining physicians, with the opinions of treating physicians generally accorded the most weight. *See Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009) (noting that there are three types of medical opinions in social security cases); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (explaining that opinions of treating physicians are entitled to more weight than opinions of examining physicians). The rationale for giving greater weight to a treating physician's opinion is that he or she is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted).

10

The applicable regulation ordinarily requires the agency to give a treating physician's opinion "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss*, 427 F.3d at 1216). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, [she] errs." *Garrison*, 759 F.3d at 1012; *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . .'" *Id.* (quoting *Orn*, 495 F.3d at 633). The opinion of a non-examining physician "cannot by itself constitute substantial evidence" justifying the ALJ's rejection of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996); *see also Pitzer v. Sullivan,* 908 F.2d 502, 506 n. 4 (9th Cir. 1990).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Social Security Administration considers specific factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the length of the treatment relationship and the frequency of examination by the treating physician; and the nature and extent of the treatment relationship between the patient and the treating physician." *Id.* (internal quotations and citations omitted). "Additional factors relevant to evaluating any medical opinion, not limited to the

11

opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided, the consistency of the medical opinion with the record as a whole, and the specialty of the physician providing the opinion." *Id*.

### 2. Discussion

#### a. Doctor Rubin

Plaintiff claims that the ALJ erred by failing to provide "specific and legitimate reasons that are supported by substantial evidence" for declining to afford the medical opinions of treating physician Dr. Rubin's controlling weight.[5] *See Ryan.*, 528 F.3d at 1198 (9th Cir. 2008) (quoting *Bayliss*, 427 F.3d at 1216). In a letter dated May 25, 2015, Dr. Rubin stated that plaintiff had a long history of migraine headaches and that plaintiff "reported an average of four to five headaches a month, and because of the intensive of the headaches, he would not expect her to be able to work at all on the days when she has the headaches." (AR 3730 (citing AR 765).) Dr. Rubin's treatment notes dated July 31, 2013, further indicate a migraine diagnosis including two "moderate to severe" headaches per week lasting "several hours per episode." (AR 966.) Next, he stated that plaintiff required unscheduled breaks from work "several times per week" lasting "hours to a day" which rendered plaintiff incapable of even "low stress jobs" because pain from migraines and other conditions "are substantial [and] stress would exacerbate this." (*Id.* at 969.)

The Court finds that the ALJ articulated specific and legitimate reasons for affording Dr. Rubin's opinion little weight. First, she incorporated into her opinion the objective medical evidence discussed in the January 2013 decision of the Initial ALJ . (*Id*. 3730 (citing AR 895).) There, that ALJ noted that Dr. Rubin's medical opinion was contradicted by a "State Agency medical consultant" who "determined in September 2010 that claimant could engage in sedentary

---

[5] Plaintiff also argues that Judge Breyer required the ALJ to "accept Dr. Rubin's opinions of her migraine headaches as being supported by medically acceptable clinical or laboratory diagnostic techniques." (Dkt. No. 49 at 14.) As previously stated, plaintiff does not persuade. The remand order specifically indicated that the new medical evidence "*arguably* tied [plaintiff's migraine claims] to such techniques." (AR 2940-41 (emphasis supplied).) The remand order did not *require* the ALJ to accept that Dr. Rubin's opinion was supported by acceptable clinical or laboratory diagnostic techniques.

12

activity with occasional postural limitations and the avoidance of asthma irritants and hazards." (AR 895.) The State Agency consultant's determination was affirmed by a second medical consultant in February 2011. (*Id*.) Second, the ALJ highlighted that a "brain MRI from May 2010 was normal." (AR 3730 (citing AR 895).) Third, she discussed the Kaiser Records which indicated that Ms. Zuniga's migraines were "under reasonably good control with only infrequent ER or other medical contacts." (*Id*. 3729 (citing AR 332).) Fourth, as noted the ALJ highlighted Ms. Zuniga's testimony regarding relatively robust daily activities. (*Id.*) Fifth, she found that the March 3, 2010, treatment notes from plaintiff's treating pharmacist indicated "that the claimant's response to conservative treatments had been good and that she had a fair functional level." (*Id*. 3730 (citing AR 895).) Finally, the ALJ noted that Dr. Lee himself found no significant changes in an April 2012 MRI except for the expected evolution from an October 2011 MRI. (*Id*. 3731 (citing AR 3535).) Accordingly, the ALJ found that Dr. Rubin's opinion was largely "based on the claimant's self-reported compliant only." (*Id*. 3730.) The ALJ then specifically addressed the district court's remand order in stating that Dr. Rubin's opinion was entitled to "little weight" even after taking into account Dr. Lee's July 19, 2013, treatment notes and reevaluating plaintiff's subjective testimony. (*Id*.)

For the reasons discussed above, the Court finds that the ALJ articulated specific and legitimate for affording Dr. Rubin's opinion little weight. Plaintiff's criticism fails.

### b. *Other Medical Sources*

Finally, plaintiff avers that the ALJ erred in failing to give "any consideration to numerous medical sources," namely Dr. Saphir,[6] Dr. Dolnak, Dr. Dwyer, Dr. McMahon, Dr. Cheng, Dr. Speradino, Dr. Weems, and Dr. Truong. However, the District Court did not order the ALJ to reevaluate or reconsider the opinions of these medical sources on remand. The District Court's order on remand was relative narrow: First, Judge Breyer instructed the ALJ to consider Dr. Lee's July 19, 2013, medical opinion in reevaluating plaintiff's credibility. Second, the ALJ was

---

[6] In any event, Dr. Saphir's opinion is limited to the time period after April 22, 2013, which is not at issue in the summary judgment motions before this Court.

13

instructed "[to] address whether, in light of the new evidence, Ms. Zuniga's impairments also existed during the period adjudicated under the January 2013 Decision" (*i.e.* from March 31, 2004 to January 31, 2013). (Dkt. No. 37 at 10-11.) For the reasons discussed above, the Court finds that the ALJ properly followed the District Court's instructions on remand. *See* Sections *IV.A.2, B.2, supra.*[7] She was not required to reassess every aspect of this case which has been pending for nearly ten years.[8]

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiff's motion and **GRANTS** defendant's cross-motion for summary judgment. No later than seven (7) days from the date of this Order, defendant must file a proposed form of judgment, approved as to form by plaintiff.

This Order terminates Docket Numbers 49 and 58.

**IT IS SO ORDERED.**

Dated: February 5, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[7] The Court notes that Judge Breyer previously found that the medical reports of Dr. Dolnak, Dr. Dwyer, and Dr. McMahon were consistent with the Initial ALJ's findings. (Dkt. No. 31.)

[8] Similarly, the ALJ was not required to consider "Ms. Zuniga's lumbar back pain [or] her affective disorders." (Dkt. No. 49 at 11.)

14